IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

HERMELINDA VERGARA,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO. 10-1804 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

Above plaintiff Hermelinda Vergara (hereafter plaintiff "Vergara") filed this action for judicial review of the final decision of the defendant, the Commissioner of Social Security (hereafter "Commissioner"), denying the application for a period of disability and ensuing disability benefits. (Complaint, Docket No. 1). Plaintiff Vergara requests the administrative determination denying disability be reversed and set aside and the claim be allowed retroactive to the date of initial disability. Plaintiff's main contention is the denial at the administrative level of plaintiff Vergara's claim was not in accordance to law nor the evidence for which she should be considered disabled and allowed disability benefits.[1]

On October 26, 2010, the Commissioner answered the Complaint and filed a copy of the administrative record. (Docket Nos. 9 and 10). On February 7, 2011, plaintiff Vergara, through her legal representative Atty. Ramón H. Rivera-Sánchez, filed a well drafted motion entitled memorandum of law. (Docket No. 11). On March 1, 2011,

---

[1] U.S.C. Sec. 405(g) provides for judicial review of the final decision of the Commissioner.
"… [t]he court shall have power to enter, upon the pleadings and transcript
of the record, a judgment without remanding the cause for rehearing". Section 205(g).

defendant filed his memorandum and counsel for plaintiff then requested an opportunity to file a reply, which was granted. However, plaintiff will not file a reply upon having withdrawn the request as unnecessary. (Docket No. 14).

These motions were initially referred to this Magistrate Judge for report and recommendation. Thereafter, the Court transferred the case to this Magistrate Judge for all further proceedings as an implied consent after the parties were granted an opportunity to indicate their positions as to the referral to a Magistrate Judge.[2] Thereafter, the parties consented expressly to proceed before the undersigned for all further proceedings, including the entry of judgment.[3] (Docket Nos. 5, 6, 7 and 14). Title 28, United States Code, Section 636(b)(1)(A), (c)(1) and (c)(2); Fed.R.Civil P. 73(a).

Upon examination of the pleadings thereafter filed, this Magistrate Judge discusses below the pending motions and the appropriate disposition of this action, ordering the decision of the Commissioner be vacated and set aside.

**BACKGROUND**

Plaintiff Vergara has claimed inability to work since December 15, 2004, due to back pain, numbness in legs and hands, herniated discs, diabetes mellitus, high cholesterol and an emotional disorder. At the alleged onset date she was a forty five (45) year-old, female, with 5th grade marginal education, who used to work as a care taker for elderly persons and

---

[2] *See* In re Sheridan, 362 F.3d 96 (1st Cir. 2004) (where the parties' actions appear to speak as clearly as words, consent may be implied) (*citing* In re G.S.F. Corp., 938 F.2d 1467 (1st Cir. 1991); *see also* Roell v. Withrow, 538 U.S. 580, 591, 123 S.Ct. 1696 (2003) (consent to proceed before a Magistrate Judge can be inferred from a party's conduct during litigation but notice of the right to refuse the magistrate judge is a prerequisite to any inference of consent.).

[3] The government has provided consent to proceed before a Magistrate Judge in all Social Security cases.

as a school janitor. Plaintiff Vergara remained insured for disability purposes up until June 30, 2006.

The record shows plaintiff had requested the administrative decision to be made on the record. However, the record seems to indicate an administrative hearing was held wherein the presiding Administrative Law Judge ("ALJ") entertained the testimony of a vocational expert without plaintiff and her counsel being present. At one instance the transcript of the administrative proceedings shows plaintiff as being present with her counsel, but evidently this was a misstatement. Thus, plaintiff Vergara submits the absence of counsel on her behalf and the ALJ undertaking of additional testimony without their presence was a violation of due process. Still, there is information plaintiff Vergara had been notified of the scheduled hearing and her counsel failed to appear, for which due process claim, is more akin to a waiver for failure to appear than to the alleged due process violation. (Transcript pp. 153-154, letter to counsel notifying hearing; *Id.* p. 155, Notice entitled "On the Record", dated 4-17-2008, submitting said case on the record without holding a hearing and listening to claimant's testimony).

The ALJ, after considering the vocational expert's testimony, issued an opinion denying plaintiff Vergara's disability claims. The Appeals Council denied the request for review, for which said final decision is now pending judicial determination.

**ADMINISTRATIVE AND PROCEDURAL HISTORY**

Plaintiff Vergara has claimed disability due to physical and mental conditions, to wit; back pain, leg and hand numbness, herniated discs, diabetes and an emotional disorder, among others.

Upon plaintiff's waiver to appear at the administrative hearing, the presiding ALJ determined that: 1) plaintiff met the insured status requirements on June 30, 2006, the date she was last insured; had not engaged in substantial activity since the date of alleged disability; suffered from severe impairments, including a back disorder and an affective disorder for these had more than a minimal effect on her ability to perform basic work activity and were thus considered severe. (Transcript, pp. 14-15). The ALJ further concluded plaintiff Vergara did not have an impairment or combination thereof that were listed in the Listing of Impairments. The ALJ indicated neither the exertional impairments related to hands and legs numbness or diabetes nor her non-exertional impairments as to pain caused by herniated discs nor the mental condition, precluded the performance of light type of work activity. The ALJ acknowledged the medical record shows the presence of a history of diabetes mellitus type 2 and hypercholesterolemia. Plaintiff was also found with complaints of strong sharp pain in the low back and legs which had been supported by the record and diagnosed with lumbosacral sprain, bulging annulus at L4-L5, with inflamation, job related. There is also a diagnosis of radiculopathy S1 right and bilateral L5 not job related, generalized peripheral neuropathy which was an organic condition and not related to her past relevant work. The State Insurance Fund awarded compensation for those job related conditions. A CT-Scan revealed minimal bulging annulus at L4-L5, fibrolipoma of the filum terminale. A nerve conduction study showed peripheral neuropathy, right S1 radiculitis with bilateral L5 temporal dispersion. A magnetic resonance study showed mild degenerative changes in the lumbar spine and confirmed the above conditions. The diagnosis was of lumbar discogenic disease, fibrolipoma of filum terminale of sacral area,

peripheral arterial and venous insufficiency, nephrolithiasis, osteopenia and diabetes mellitus.  The medical record showed the patient had complained of joint pain, radiating pain with muscle spasm and was found with sciatic pain.  A consultant internal medicine report indicated there was mild paralumbar muscle spasm with mild limitation of range of motion, mild osteoarthritis with spasm, para-lumbar muscle spasm with mild limitation of range of motion by exam, discogenic disease by history at L4-L5, mild osteoarthritis by X-ray, peripheral neuropathy, hypercholesterolemia by history, renal stones by history.  (Transcript p. 18, Exhibit 2F).

There is a physical residual functional capacity assessment by the state agency dated June 15, 2007, which submitted a capacity for the full range of light work, which seemly the ALJ credited to the exclusion of the rest of the medical evidence of record.  (Id., Exhibit 12F).  Plaintiff Vergara had been hospitalized at the Hospital General Menonita from May 9, 2006 through May 13, 2006 for chest pain, shortness of breath, nausea, dizziness, cold sweating and pain that radiated to her left arm.  An electrocardiogram at the time showed sinus tachycardia.  The patient had visited the emergency room for low back pain by June 2007, and for complaints of severe numbness in upper extremities.  She was found with olecranon bursitis, small calcification of the left olecranon which could represent a small chronic calcified tendinopathy.  By December 26, 2007, she was diagnosed with herniated nucleus pulposus, lumbar sacral sprain, bulging L4-L5 fibrolipoma.  (Transcript p. 19).

Insofar as the psychiatric condition, the ALJ considered a psychiatric evaluation dated January 20, 2006, by Dr. Rafael H. Miguez-Balseiro rendered a reserve prognosis with a diagnosis of mood disorder secondary to physical conditions, depressed.  (Transcript

pp. 19-20). There are two Psychiatric Review Technique Evaluations on record, as well as progress notes of treatment which were considered by the ALJ, although still considered were predominantly based on plaintiff's reported subjective symptoms. (Id. pp. 20-21). The ALJ took notice the medical sources had not placed nor recommended hospitalization or placement in a sheltered or highly supported living environment because of the severity of plaintiff's physical or mental condition. (Id. p. 21).

Thereafter, the ALJ issued an opinion dated July 18, 2008 providing greater weight to the State Agency's expert medical and other personnel as to the severity fo plaintiff's symptoms, which he considered consistent and supported by the preponderance of the medical evidence of record. The ALJ determined plaintiff Vergara, although could not perform her relevant work as janitor and housekeeper, was still not under disability for she retained the residual functional capacity to perform the full range of light work and her musculo-skeletal conditions did not preclude same. Based on the testimony of the vocational expert at the hearing held without the presence of plaintiff, who had waived appearance, nor her counsel, who had requested a decision on the record, but who still failed to appear although receiving notice of date set for the hearing, considering plaintiff's age, education, work experience and residual functional capacity, there were light, as well as sedentary, type of work she could perform.

The ALJ's decision was affirmed by the Appeals Council.

### THE ALJ'S DECISION AND THE APPEALS COUNCIL

The ALJ applied in his administrative process the evaluation process mandated by law, insofar as concluding that plaintiff: (1) met the non-disability requirements for a period

of disability and disability insurance benefits and is insured for benefits through June 30, 2006; (2) had not engaged in substantial gainful activity since the alleged onset date of disability; (3) allegations of severe impairments or combination thereof had more than a minimal affect on her ability to perform basic work-related activities, constituting severe impairments; (4) plaintiff did not have an impairment or combination that meets or equals the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) upon consideration of the entire record plaintiff had the residual functional capacity to perform the full range of light and/or sedentary type of work. Considering plaintiff's residual functional capacities for light work, the ALJ determined she could not perform her previous kind of work as a janitor or housekeeper.

The ALJ stated having also considered plaintiff's allegations of pain both as substantiated by the medical evidence. The ALJ concluded, based on the factors enumerated by him as to how it affected plaintiff's daily activities, the medication and/or treatment prescribed for the alleged pain, statements about pain or other symptoms, that these alone did not establish disability. The ALJ finally concluded that plaintiff Vergara had waived her presence at the administrative hearing in writing, thus not allowing the ALJ to consider her testimony or observe her demeanor on the issues raised. However, evaluating her medical history and treatment, the ALJ discussed to some extent how her allegations of non-exertional limitations imposed by her claims as to pain were corroborated by objective medical findings, medications prescribed and medical examinations. The ALJ determined that a preponderance of the evidence and other medical record assessed, and giving greater weight to the State Agency's medical evaluations, that regardless of the

mental condition and non-exertional limitations of pain, plaintiff Vergara retained the capacity for light and sedentary type of work for which she was found not under disability and denied her disability claim.

## LEGAL ANALYSIS

The Court's review is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. *See* Manso-Pizarro v. Secretary of Health and Human Services, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986); Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991).

To establish entitlement to disability benefits, the burden is on the claimant to prove that she is disabled within the meaning of the Social Security Act. *See* Bowen v. Yuckert, 482 U.S. 137, 146-47, n. 5 (1987). It is well settled law that a claimant is disabled under the Act if he/she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such

work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a). A five-step sequential evaluation process must be applied to every case in making a final determination as to whether a claimant is or not disabled. 20 C.F.R. §§ 404.1520; *see* Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Goodermote v. Sec. of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).

Through step one the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he/she is, disability benefits are denied. §§ 404.1520(b). If not, the decision-maker proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments. *See* §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines

whether the impairment prevents the claimant from performing the work he/she has performed in the past. If the claimant is able to perform his/her previous work, he/she is not disabled. §§ 404.1520(e). If it is determined that the claimant cannot perform this work, then the fifth and final step of the process demands a determination on whether claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform other work. §§ 404.1520(f). The ALJ in the instant case examined and analyzed plaintiff's case following the steps above described.

The claimant has the burden, under steps one through four, of proving that he/she cannot return to his/her former employment because of the alleged disability. Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991). In the present case, plaintiff Vergara was found by the ALJ unable to perform her previous past relevant work and, thus, continued from the examination after said step four consideration. By determining the residual functional capacity for light and thus sedentary type of work, and upon the testimony of a vocational expert at the administrative hearing, the ALJ concluded there were jobs available in the national economy within plaintiff's residual functional capacity. The ALJ opined plaintiff Vergara was not under disability and the Appeals Council thereafter affirmed.

It is also argued, the ALJ failed to provide valid reasons to reject the opinion of a psychiatric consultant, and in the absence of consideration or credibility, resulted in a lack of substantial support for the ALJ's determination.

The Court of Appeals for the First Circuit has indicated an ALJ is "not required to recite every piece of evidence that favored appellant." *See* Stein v. Sullivan, 966 F.2d 317, 319 (7th Cir. 1992) (noting that the level of articulation required is not precise). *See* 20 C.F.R. § 404.1527(d) ("We will always give good reason in our notice of determination or decision for the weight we give your treating source's opinion); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

The Commissioner, through the ALJ, is authorized to give greater weight to testimony and reports of medical experts commissioned by the administrative agency than to testimony and reports of other medical experts in determining whether a claimant is disabled. Similarly, the ALJ is entitled to reject a treating physician's conclusions that a claimant is totally disabled and accept contradictory medical evidence in the record. Keating v. Secretary of Health & Human Servs., 848 F.2d 271 (1st Cir. 1988). That more weight is given to those reports of non-primary treating physician is not an error of the ALJ. *See* Barrientos v. Secretary of Health & Human Servs., 820 F.2d 1, 2-3 (1st Cir. 1987).

The ALJ made reference to the testimony of the vocational expert, Dr. Ariel Cintrón. Plaintiff Vergara's previous two jobs were discussed. As a janitor, it was considered simple, non-skilled, but with heavy physical demands. The home attendant job, taking care of elderly persons, required medium level of exertion and it was semi-skilled. (Transcript pp. 30-31). The vocational expert answered questions of the ALJ as to an individual who could

sit, walk, stand for at least six hours in an eight hour work day, who had no limitation in pushing and pulling, nor with hand operation or foot controls and who could occasionally climb, stairs, ramps, ladders and scaffolds, balance frequently and kneel frequently, with occasional crouching and crawling. In addition, the ALJ submitted to the vocational expert as hypothesis that the individual at issue would have no manipulative, visual, communicative or environmental limitations, that her mental stage was light to moderately affected and she retained the ability to understand, remember and carry out simple and detailed instructions, of maintaining attention and concentration for at least two hours, responding to changes in the work setting and environment and relating appropriately to other people like supervisors and co-workers. Under the above conditions, the vocational expert indicated there were jobs requiring only light level of exertion that plaintiff could perform, such as small product assembler, which was non-skilled; similarly the vocational expert testified as to the job of hand trimmer in the garment industry which also required light level of exertion. (Transcript pp. 33-34).[4]

Courts give deference to the ALJ's interpretation of the medical record and notice that, although an ALJ is not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion, upon the existence of conflicts in the medical record from the report and sources, it is still not for the Court to resolve same. *See* Nguyen v. Chater, 172 F.3d 31 (1st Cir. 1999); Lizotte v. Secretary of Health & Human Servs., 654

---

[4] Counsel for plaintiff Vergara indicated the presence at the administrative hearing was not only waived by her she had requested the decision be based on the record. Thus, counsel considers the vocational expert's testimony a violation of due process, for it was not expected the ALJ would entertain testimony at an administrative hearing without the presence of counsel. Since this Opinion and Order considers the extent of the testimony solely on the basis of the hypothetical questions for light level of exertion is not supported by the substantial evidence established by the medical record, the vocational expert's testimony is considered harmless and due process need not be addressed.

F.2d 127 (1st Cir. 1981) (the resolutions of conflicts in the evidence and the determination of the ultimate question of disability is for him [the ALJ], not for the doctors or for the courts). *See also* Rodríguez v. Secretary of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

To review the final decision of the Commissioner courts must determine if the evidence of record meets the substantial evidence criteria. Substantial evidence is "more than a mere scintilla and such, as a reasonable mind might accept as adequate to support a conclusion". Richardson v. Perales, 402 U.S. 389 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938). The findings of the Commissioner as to any fact are conclusive, if supported by the above stated substantial evidence.[5] The court would set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a legal error. *See* Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Rodríguez, 647 F.2d at 222.

Counsel for plaintiff has extensively discussed in his memoranda several aspects of the case in regards to the medical evidence and the combination of plaintiff Vergara's impairments, particularly that no proper weight was given by the ALJ to the treating physicians' medical reports and the ALJ dismissed the medical opinions without justification. In addition to the existent mental condition, plaintiff Vergara had complained of physical impairments which were considered severe. Since a work accident on March of 2003, plaintiff continuously endured pain in the low back and legs and was diagnosed with lumbosacral strain and bulging annulus at L4-L5, fibrolipoma and radiculitis at S1 right and

---

[5] Falu v. Secretary of Health & Human Servs., 703 F. 2d 24 (1st Cir. 1983).

L5 bilateral, although not related to the work accident by the state agency. (Transcript pp. 214-218). Although there was some improvement of the condition with treatment, there was clinical evidence on examination of inflammation and muscle spasm with limited range of motion. Dr. Saul Cruz-Rivera referred the patient to a neurosurgeon referring to pain being exquisite to touch in the sacral area. (Transcript p. 89).[6] A CT scan corroborated the statement of the physician. (Transcript pp. 435-436). A scan dated October 10, 2007 revealed small calcification at the left olecranon which could represent small enthesophyte or chronic calcified tendinopathy. (Id. p. 434).

Psychiatrist Dr. José Rodríguez-Cay referred to plaintiff Vergara as suffering from major depression with dysthymia. The patient was admitted at the San Juan Capestrano Hospital for her mental condition from July 12, 2007, through July 23, 2007. The hospital record referred to history of diabetes mellitus, discogenic disease, peripheral neuropathy and hypertension, confirmed by laboratory tests. The patient had also complained of severe pain, numbness and weakness. Dr. Rodríguez-Cay states the limitations as the patient having marked capacity to take care of activities of daily living, marked and extreme limitation in her capacity to understand, remember and carry out simple and complex tasks. Judgment and capacity to interact with others was extremely limited and she could not

---

[6] Dr. Cruz-Rivera refers a note to the neurosurgeon as to the existence of lumbosacral discogenic disease after performing certain lab tests and CT which confirmed there was L4-L5 bulging and fibrolipoma of the filum terminate with exquisite pain when touching the distal side of the sacrum rectally. (Transcript p. 89).

respond appropriately to work pressure or changes in work setting. (Transcript pp. 391-433).[7]

A consultative psychiatrist, Dr. Rafael H. Miguez-Balseiro, submitted a medical report in January 20, 2006, with a diagnosis of mood disorder secondary to physical condition. Activities of daily living were described as limited and there is some mention of church activities, without further description. The patient was observed as overweight and slow, looking older than her age, adequately dressed with rigid posture and facial expression of worry. The tone of voice was monotonous and the pitch was low. Mood was depressed and superficial. The patient had poor memory and concentration and limited capacity for abstraction. (Transcript pp. 230-232; see also Exhibit 3F, pp. 71-73).

Dr. Cruz-Rivera had submitted that by September of 2005 a complete work up of the patient presented diagnosis of major depression, lumbar discogenic disease, fibrolipoma of filum terminale of sacral area, peripheral arterial and venous insufficiency, nephrolithiasis and osteopenia. There was a history of diabetes mellitus with complications, including the medical plan did not cover the required medication and the patient's limited income did not allow for frequent medical visits. A nerve conduction velocity tests of the lower extremities of March 2003 had showed generalized peripheral neuropathy, right S1 radiculitis and bilateral L5 radiculitis. There was positive Lasegue and peripheral muscle spasms. There was no full range of motion of the lumbar area. A follow up examination on

---

[7] Plaintiff submitted receiving help and assistance in daily activities from her husband and her children since she does not bathe herself; her children cooked and served the food; she does not clean the house nor bend because of pain nor does house or yard work. (Transcript pp. 58-59). Church activities were limited because she cannot sit for long periods; does not drive nor shops and is always accompanied. (Id. p. 60).

Hermelinda Vergara v. Commissioner of S.S.
Opinion and Order
Civil No. 10-1804 (CVR)
Page No. 16

October 2004 disclosed no medical improvement and found nerve root compression.[8] In January 15, 2005, limping was observed, with positive Lasegue and paravertebral muscle spasms. The reports of September of 2005 noted increased sensory perception, diminished reflexes and limitation of movement of the lower extremities, signs of inflammation of joints, edema and varicosities. The treating physician, Dr. Cruz-Rivera diagnosed major depression, discogenic disease of the lumbar area, hypertension, diabetes mellitus, retinopathy, nephrolithiasis, and fibrolipoma of filum terminale in sacral area, with a poor prognosis. (Transcript pp. 307-355).

In May 9, 2006, the patient was admitted to the Mennonite General Hospital in Aibonito because of chest pain. The record shows elevated blood sugar levels and described the use of multiple medications for diabetes mellitus, hypertension and an emotional condition. She was provided with additional medications including Acetaminophen, Temazepam, Morphine Sulfate, Nitrol, Lantus, Lovenox, Novolog, Aspirin, Atenolol, Avapro, Docusate Sodium, Lipitor, Plavix and Protonix. (Transcript pp. 264-302). Counsel for plaintiff Vergara reasonably submits these medications suggest more severe medical conditions than the ones recognized by the ALJ.[9]

The ALJ's determination of residual functional capacity is based on assumptions and not evidence of record, mainly from an assessment plaintiff had indicated she attended

---

[8] A notation as to evaluation of the patient by March 2004 indicated she could not perform the full range of lumbar column and suffered from radiculopathy type constant pain. (Transcript p. 78).

[9] Succinctly, Temazepam is a benzodiazepine used for insomnia; Morphine Sulfate is use as a pain killer; Nitrol is type of nitroglycerin use to prevent episodes of chest pains due to angina; Lantus and Novolog are used to treat diabetes; Lovenox is an anticoagulant therapy to prevent deep vein thrombosis due to venous insufficiency presence; Atenolol and Avapro are used to treat high blood pressure; Docusate Sodium treats constipation; Lipitor and Plavix help reduce the risk of heart attack and stroke and related cholesterol; and Protonix treats gastroesophageal reflux disease.

church activities. Except for a note as to attending church, there is no indication as to the frequency or extent of said religious activities, whether they required driving or extensive siting or standing, from which residual functional capacity could be conclusively determined. Neither was the combination of non-exertional impairments, back pain, numbness, weakness, limitations and inflammation of the extremities, neuropathy, radiculitis, and nerve compression, together with limitations imposed by her mental condition assessed. More so when there is no controversy in the medical evidence, neither as to the treating sources nor the consultative medical evaluations, as to the existence of these conditions or any suggestion that the patient was malingering any of the conditions therein diagnosed.

In view of the foregoing, this Magistrate Judge opines the decision of the Commissioner is not supported by substantial evidence in the record as whole, insofar as plaintiff's mental impairment and combination with her non-exertional limitations imposed by pain and by her physical conditions, for which reason it should be VACATED.

## CONCLUSION

For the reasons above discussed, this United States Magistrate Judge, having carefully perused the record and considered whether there was substantial evidence in support of the decision rendered by the Commissioner concludes the Commissioner's decision is not supported by substantial evidence. As such, the Commissioner's decision is **VACATED**.

Hermelinda Vergara v. Commissioner of S.S.
Opinion and Order
Civil No. 10-1804 (CVR)
Page No. 18

Judgment to be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 15th day of March of 2011.

                              S/CAMILLE L. VELEZ-RIVE
                              CAMILLE L. VELEZ RIVE
                              UNITED STATES MAGISTRATE JUDGE